IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 09-23155-CMB |
| ) | |
| ROCK AIRPORT OF PITTSBURGH, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ROCK AIRPORT OF PITTSBURGH, LLC, ) | |
| ) | Related to Doc. Nos. 700 & 773 |
| Objector, ) | |
| ) | |
| v. ) | |
| ) | |
| MANAGEMENT SCIENCE ) | |
| ASSOCIATES, INC., ) | |
| ) | |
| Claimant. ) | |

**MEMORANDUM OPINION**

This matter came before the Court upon the filing of the *Debtor's Objection to Claim No. 3 of Management Science Associates, Inc., Transferee of the Priscilla Grden Living Trust Claim* ("Objection").[1] Thereafter, the Debtor filed a supplement to its Objection ("Supplement"). Management Science Associates, Inc. ("MSA") subsequently filed its *Response in Opposition to Debtor's Objection to Claim No. 3 of Management Science Associates, Inc., Transferee of the Priscilla Grden Living Trust; Request Pursuant to 11 U.S.C. §502(c) for Estimation and Allowance of Claim; and Request Pursuant to Federal Bankruptcy Rule 3018(a) to Allow the Claim for Purposes of Accepting or Rejecting a Plan* ("MSA Response"). Following a hearing

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(B). If the District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to determine and enter an order on this matter, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

on July 14, 2014, this Court scheduled an evidentiary hearing on August 6, 2014 on the Objection and any motion to estimate the claim and/or for temporary allowance of the claim and/or related request for relief provided that said motion was filed on or before July 18, 2014. The scheduling order set a deadline for responding to any such motion and also set a briefing deadline of August 1, 2014. Pursuant to the order, MSA filed its *Motion to Estimate Claim and/or for Temporary Allowance of Claim* ("Motion to Estimate"). Debtor did not file a response to the Motion to Estimate; however, both parties filed briefs regarding the claim litigation.

By way of background, Priscilla Grden Living Trust ("Trust") filed a Proof of Claim on June 8, 2009, in the amount of $6,630.95 for alleged property damage based upon an award entered following arbitration in the Court of Common Pleas of Allegheny County. The arbitration award was attached as an exhibit to the Proof of Claim. The Trust brought the action against both the Debtor and Rock Ferrone, managing member of the Debtor, but the award was entered against the Debtor only in favor of the Trust in the amount of $6,437.82.[2] The Debtor filed a Plan of Reorganization Dated May 23, 2014 (Doc. No. 642), which provided for payment of the Trust's claim in full over a period of sixty months or in a reduced lump sum payment on the effective date of the plan. That plan was later amended.

Approximately five years after the claim was filed, on June 9, 2014, notice was filed on the docket of the above-captioned case that the Trust's claim was transferred to MSA.[3] Shortly thereafter, Debtor filed its Objection, disputing the debt and requesting underlying documentation. Furthermore, the Debtor asserted that the award entered by the Board of

---

[2] The Court notes that the amount of the Proof of Claim, though apparently based upon the arbitration award, is more than the amount of the award by nearly $200.00. MSA contends, however, that the underlying complaint filed by the Trust supports an award in favor of the Trust up to the amount of $7,781.73 pursuant to the terms of the applicable statute.

[3] No formal objection was filed on the docket to the notice of transfer of claim although Debtor's counsel questioned at the evidentiary hearing why proof of the assignment was not provided. No evidence was presented to defeat that a transfer occurred.

Arbitrators was appealed by Debtor resulting in a trial de novo, said appeal having been stayed by the commencement of this bankruptcy case. Notwithstanding this dispute, the Objection also provides that the Debtor's principal, Mr. Ferrone, tendered payment in full satisfaction of the claim. Accordingly, the Objection seeks disallowance of the claim. Debtor's Supplement advises that MSA refused the payment by Mr. Ferrone. Following these developments in the case, Debtor's Amended Plan of Reorganization Dated June 20, 2014, provides for the claim as follows: "This claimant's claim was satisfied when Debtor's principal tendered payment in full, notwithstanding a dispute regarding its validity."

In the MSA Response to the Objection, MSA asserts that the Objection is a bad faith attempt to undermine MSA's standing to object to the Debtor's proposed plan of reorganization and MSA's standing to file its own plan of reorganization. Nevertheless, MSA contends that it remains a party in interest. The issue of MSA's standing is of imminent significance as confirmation hearings on the competing plans are scheduled on August 21, 2014. Furthermore, following approval of MSA's disclosure statement, Debtor filed its *Expedited Motion for Limited Reconsideration of Order Approving Amended Disclosure Statement of Management Science Associates, Inc,* ("Motion for Reconsideration"), seeking reconsideration to the extent that the order implicitly finds that MSA has standing to pursue its plan or, alternatively, articulation of the basis upon which the Court finds standing. It is acknowledged by Debtor that resolution of the Objection may affect this Court's ruling on MSA's standing. Accordingly, the Motion for Reconsideration was also set for hearing on August 6, 2014. Said motion will be addressed by separate order.

Faced with the possibility that it would be disenfranchised from voting due to the pending Objection, following the hearing on July 14, 2014, MSA filed its Motion to Estimate, which was

3

also addressed at the August 6, 2014 evidentiary hearing. The Motion to Estimate seeks, pursuant to 11 U.S.C. §502(c), that the court estimate the claim for the purpose of allowance. Alternatively, citing to Fed.R.Bankr.P. 3018, MSA seeks temporary allowance of its claim for the purpose of accepting or rejecting a plan. No response by the Debtor was filed regarding these requests.

Upon consideration of the Proof of Claim, Objection, Supplement, MSA Response, Motion to Estimate, the briefs filed by the parties, the testimony and evidence presented on August 6, 2014, and for the reasons stated on the record, this Court finds as set forth herein.

As a preliminary matter, the Court notes that §502(c) and Fed.R.Bankr.P. 3018 provide useful tools to the Court when a claim cannot be adjudicated before a confirmation hearing. However, to the extent this Court can resolve the Objection, the Motion to Estimate is rendered moot. Furthermore, the resolution of the Objection aids the Court in ruling on the related matter of MSA's standing. Accordingly, the Court begins the analysis with the goal of resolving the Objection.

When considering an objection to a proof of claim, a court must apply the shifting burden of proof applicable to these proceedings. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Initially, it is the claimant's burden to allege sufficient facts in support of its claim. *Id.* Upon the filing of claim in compliance with this initial burden, the burden shifts, and "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at 173-74. Should the objector meet its burden, the burden shifts back to the claimant to establish its claim by a preponderance of the evidence. *Id.* at 174. However, it has been noted that where a proof of claim is insufficiently

4

filed, "it may be deprived of its *prima facie* validity and the burden will therefore remain with the claimant." *See In re Frascella Enterprises*, 360 B.R. 435, 458 n.49 (Bankr.E.D.Pa.2007).

As filed by the Trust, the Proof of Claim consists of very little information provided in a completed Official Form and the arbitration award dated October 29, 2008. Debtor, however, appealed that award resulting in a trial de novo under Pa.R.C.P. 1311. Accordingly, the award is not a judgment as it was properly appealed. *See In re Alberts*, 381 B.R. 171, 179-180 (Bankr.W.D.Pa. 2008)(citing *Weber v. Lynch*, 375 A.2d 1278 (Pa. 1977)). The Proof of Claim as filed does not allege sufficient facts in support of the claim and is deprived of its *prima facie* validity.

To the extent that the Debtor seeks underlying documentation for the claim asserted and objects to the Proof of Claim for failure to allege sufficient facts, MSA complied by providing sufficient facts in support of its claim. The complaint filed by the Trust in the underlying action is attached as an exhibit to the MSA Response. The statutory basis set forth within the complaint is 42 Pa.C.S. §8311, titled Damages in actions for conversion of timber, which provides, as follows:

> (a) General rule.--In lieu of all other damages or civil remedies provided by law, a person who cuts or removes the timber of another person without the consent of that person shall be liable to that person in a civil action for an amount of damages equal to:
>> (1) the usual and customary costs of establishing the value of the timber cut or removed and of complying with the erosion and sedimentation control regulations contained in 25 Pa. Code Ch. 102 (relating to erosion control);
>> (1.1) the cost of any surveys obtained in connection with the civil action; and
>> (2) one of the following:
>>> (i) three times the market value of the timber cut or removed if the act is determined to have been deliberate;
>>> (ii) two times the market value of the timber cut or removed if the act is determined to have been negligent; or

5

> (iii) the market value of the timber cut or removed if the defendant is determined to have had a reasonable basis for believing that the land on which the act was committed was his or that of the person in whose service or by whose direction the act was done.
>
> (b) Restitution.--Any damages awarded under this section shall be reduced by any restitution which is made under 18 Pa.C.S. §1107 (relating to restitution for theft of timber).
>
> (c) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
>
> "Timber." Standing trees, logs or parts of trees that are commonly merchandized as wood products.
>
> "Market value." The value of the standing timber at local market prices for the species and quality of timber cut or removed at the time it was cut or removed.

The complaint names the Debtor and Mr. Ferrone, as defendants. In that action, the Trust asserts that individuals hired by defendants entered onto the Trust's property, without consent, and cut down trees and caused other damage to the property. The Trust alleges two incidents, one in 2005 and one in 2006. Several exhibits are attached to the complaint. While these documents sufficiently support the claim, they do not restore *prima facie* validity to the Proof of Claim. The Court now turns to whether MSA met its burden.

Although MSA was unable to produce any witness who saw workers indisputably acting on behalf of the Debtor physically on the Trust's property cutting down timber, the credible evidence supports the conclusion that the trees were removed at the behest of Debtor in 2005 and 2006 (respectively, "2005 Incident" and "2006 Incident"). Throughout this period of time, Mr. Ferrone, the managing member of the Debtor, acknowledged that construction, and even tree removal specifically, was occurring at the airport but denied any involvement of the Debtor in cutting down trees located on the Trust's property. However, the Trust's property was of obvious significance to Debtor as the evidence establishes that the Debtor was interested in acquiring the Trust's property. Furthermore, certain maps of the area created by a company working for Debtor to design the development of the airport labeled the Trust's property with designations

indicating tree obstruction and identifying the property as property to be acquired (Exhibits K and L). Although the 2005 Incident has been credibly characterized as typical of a professional logging operation, it is curious that the logs were haphazardly left in a pile on Debtor's property. There is no easily identifiable benefit for any third party to cut down the trees and abandon the valuable product on Debtor's property. It is more likely that the purpose of removing the trees was not for the timber but rather to reduce an obstruction. This is consistent with the manner in which the trees were mowed down in the 2006 Incident by heavy equipment. Likewise, the apparent purpose was not to obtain the value of the timber but rather to remove the trees.[4]

With respect to both incidents, the need for equipment is obvious. First, the 2005 Incident would require a machine to remove the trees from the Trust's property. Second, in the 2006 Incident, the way the trees were mowed down would have been accomplished through the use of heavy equipment. The credible testimony and evidence establishes that there was no access to this location on the Trust's property for such machinery but by way of the airport property. Furthermore, tracks from such equipment indicated that the equipment was moving between the Debtor's property and the Trust's property.

The credible evidence shows that trees that were cut down and mowed down were located on the Trust's property. At least one photograph shows what appears to be a flag attached to a wooden stake with a significant amount of destruction behind it (Exhibit J). Mr. Ferrone testified that certain wooden stakes did not demarcate the property line but rather were placed

---

[4] The Court notes that Mr. Joseph Kappeleski and Mr. Joseph Chabel were called as witnesses by the Debtor. Their testimony related to one particular day on which Mr. Kappeleski cut down trees near the end of the runway at the airport as directed by the Department of Aviation. Mr. Chabel happened to be present on this date and confirmed Mr. Kappeleski's credible testimony that he was not cutting down trees on or near the Trust's property. While their testimony was credible as to that particular date, neither witness had particular knowledge of either date on which the 2005 and 2006 Incidents occurred. Clearly, trees were cut down and mowed down at the Trust's property but neither witness was able to shed any light on those events.

7

based upon a survey completed on behalf of the Debtor for construction work that was being accomplished on the airport property. According to Mr. Ferrone, the stakes were "clearing stakes" which were placed ten feet off of the property line for the benefit of the Debtor's contractors. No survey was produced on behalf of the Debtor. Furthermore, Mr. Ferrone's familiarity with the stakes in that portion of the property is questionable as his testimony reflects that he was rarely in that area of the property.

The credible testimony of James Carlberg establishes that the trees cut down on the Trust's property in the 2005 Incident were clearly on the Trust's property. Mr. Carlberg was retained following the 2005 Incident to prepare a Timber Trespass Appraisal (Exhibit E), and his credentials were stipulated to by Debtor on the record. As provided in his appraisal and testimony, Mr. Carlberg testified that, in his opinion, an evident boundary line was crossed. In addition to his testimony that older, weathered wooden stakes from a previous survey were fairly close but not on top of the iron pins from the recent survey (Exhibit B) on which he was relying, his report further provides a strong basis for his opinion: "A previous land-clearing project on the adjacent property worked very near the boundary line. As such, there were very few residual trees on that adjacent property." Mr. Carlberg's testimony is consistent with the credible testimony of Ms. Grden, who was extremely familiar with the property boundary and recalled a tree line and older, wooden stakes that were indicators of the property line. The court finds this testimony to be credible and is convinced that the property line was evident and deliberately crossed.

Based upon the foregoing, this Court finds that Debtor caused the trees to be cut down on the Trust's property. Furthermore, this Court finds that the trees constitute timber under the terms of the applicable statute, which defines timber as follows: "Standing trees, logs or parts of trees

8

that are commonly merchandized as wood products." Debtor's brief asserts that the definition of timber under the statute is more narrowly defined as set forth in *Christian v. Yanoviak*, 945 A.2d 220 (Pa.Supert.Ct. 2008). In *Christian*, the court found 42 Pa.C.S. §8311 to have no applicability where the facts involved trees in a residential backyard situated for the purpose of shade, decoration, and a barrier between the residence and the Pennsylvania Turnpike. This case is distinguishable as the Trust's property was consistently characterized as an undeveloped, vacant, wooded lot. Furthermore, based upon the testimony of Mr. Carlberg, this Court finds that the trees were timber within the definition of the statute.

MSA only produced evidence of damages in relation to the 2005 Incident. MSA produced an invoice establishing the cost of the survey as $3,300.00 (Exhibit C) and an invoice establishing the cost of obtaining an appraisal of the timber as $450.00 (Exhibit F). The credible evidence establishes that the market value of the timber removed is $1,343.91. For the reasons previously stated, the Court finds the removal to have been deliberate, thus resulting in an award three times the market value of the cut timber. Therefore, MSA established entitlement to an award in its favor of $7,781.73, calculated as follows: $3,300.00 (cost of survey) plus $450.00 (cost of assessing the value of the timber) plus $4,031.73 (three times the market value of the timber).

Notwithstanding the foregoing, Debtor has argued that the matter is resolved by virtue of Mr. Ferrone tendering payment to MSA in the amount of $6,630.95, consistent with the Proof of Claim filed by the Trust, in full satisfaction of the claim. As an appeal of the arbitration award results in a trial de novo and said appeal is deemed to be an appeal by all parties under the Pennsylvania Rules of Civil Procedure, the offer of payment was made with respect to a claim that had not been liquidated as the Proof of Claim appears to have been based upon the

arbitration award. Apparently acknowledging this fact, Mr. Ferrone subsequently represented that he was prepared to pay the full amount that could possibly be awarded as damages under the statute in order to fully satisfy the claim. At the evidentiary hearing, it was represented to the Court that MSA rejected that offer. The Court finds that Mr. Ferrone's offer of payment was nothing more than an offer to purchase a claim, which was rejected by MSA. While Debtor contends that MSA is obligated to accept this payment from a named defendant in the underlying action, Debtor cites only to 13 Pa.C.S. §3603 in support of its position. That provision, by its own terms, applies to "tender of payment of an obligation to pay an *instrument*[.]" (Emphasis added.) As the term instrument is defined in §3104 of that title, which is the Commercial Code, Debtor failed to establish the applicability of §3603, and this Court finds that the provision is not applicable to the matter before the Court.

Based on the foregoing, the Court finds that MSA has an allowed unsecured claim in the amount of $7,781.73.

Had the Court been unable to resolve the Objection prior to the scheduled confirmation hearings, the Court would have at least temporarily allowed the claim to provide MSA with the opportunity to accept or reject a plan. This Court will briefly address the Motion to Estimate as it has thoroughly considered the matters presented. Courts have distinguished between estimation and allowance under §502(c) and Fed.R.Bankr.P. 3018. *See In re Frascella Enterprises*, 360 B.R. 435, 457 (Bankr.E.D.Pa.2007); *Stone Hedge Properties v. Phoenix Capital Corporation* (*In re Stone Hedge Properties*), 191 B.R. 59, 63-64 (Bankr.M.D.Pa.1995). With respect to estimation, as sought in this case, §502(c) of the Bankruptcy Code directs the Court as follows:

> (c) There shall be estimated for purpose of allowance under this section--
>     (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case[.]

See 11 U.S.C. §502(c)(1). Estimation and allowance are also addressed by Fed.R.Bankr.P. 3018, which provides in pertinent part as follows:

> Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.

*See* Fed.R.Bankr.P. 3018(a). Thus, courts have acknowledged that while §502(c) *directs* a court to estimate a claim in certain circumstances, the provision limits itself to contingent and unliquidated claims and determines voting rights *and* distribution. *See Frascella*, 360 B.R. at 457; *Stone Hedge*, 191 B.R. at 63-64. In contrast, Fed.R.Bankr.P. 3018 *permits* a court to temporarily allow a claim for voting purposes only. *Id.* In the event this Court was unable to resolve the Objection prior to the scheduled confirmation hearings, this Court finds that MSA's disputed claim would appropriately be estimated as a $7,781.73 unsecured claim under Fed.R.Bankr.P. 3018 for purposes of accepting or rejecting a plan. As the Objection has been resolved, estimation is unnecessary.

Therefore, based upon the foregoing, the Objection is overruled, and MSA has an allowed unsecured claim in the amount of $7,781.73. The Motion to Estimate is moot. An appropriate Order will be entered consistent with this Memorandum Opinion.

Date: August 8, 2014           \_\_/s/ Carlota M. Böhm_____
                                Carlota M. Böhm
                                United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
  Office of the United States Trustee
  Natalie Lutz Cardiello, Esq.
  Kirk B. Burkley, Esq.
  Rodger L. Puz, Esq., David K. Rudov, Esq., and Gregory C. Michaels, Esq.
  Robert O. Lampl, Esq. and Thomas E. Reilly, Esq.