IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 09-23155-CMB |
| ROCK AIRPORT OF PITTSBURGH, LLC, | Chapter 11 |
| Debtor. | |
| K-COR, INC. D/B/A ROCK BUILT, | |
| | Related to Doc. No. 938 |
| Movant, | |
| v. | |
| NATALIE LUTZ CARDIELLO, as CHAPTER 11 TRUSTEE, | |
| Respondent. | |

## MEMORANDUM OPINION

The matter before the Court is the *Objection of K-Cor, Inc. d/b/a Rock Built to Sale of All or Substantially All of the Debtor's Assets* ("Objection").[1] The Chapter 11 Trustee filed a response in opposition to the Objection. A Joinder to the Chapter 11 Trustee's Response was filed by The Huntington National Bank. A response in opposition to the Objection was also filed by Management Science Associates, Inc. and Alaskan Property Management Company, LLC. The parties filed briefs, and an evidentiary hearing on the matter was held on September 4, 2014.

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A). Furthermore, consent to this Court hearing the matter was provided on the record at the August 21, 2014 hearing. If the District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to determine and enter an order on this matter, then the Memorandum Opinion and Order entered shall constitute this Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

1

By way of background, the Chapter 11 Trustee filed an *Amended Motion Seeking Order Approving Sale of Property Free and Clear of all Liens, Claims and Encumbrances* ("Sale Motion") on June 11, 2014. Responses to the Sale Motion were due on or before August 11, 2014, and a hearing on the Sale Motion was held on August 21, 2014 ("Sale Hearing"). At that time, it was represented to the Court that nearly all of the outstanding objections and issues had been resolved with respect to the Sale Motion except for the asserted ownership interest of K-Cor, Inc. d/b/a Rock-Built ("K-Cor") in a building, commonly referred to as the Rock-Built Building, and parcel of land located at 1000 RockPointe Boulevard, at Rock Airport, in Tarentum, Pennsylvania (the "Property").[2] K-Cor also asserts an ownership interest in personal property and equipment inside the Rock-Built Building; however, it appears that this latter issue is uncontested at this time.[3]

By the time of the Sale Hearing, although K-Cor had participated in other proceedings before this Court and K-Cor was named as a respondent to the Sale Motion, K-Cor failed to file a timely objection to the Sale Motion. It is significant, however, that Rock Ferrone is the principal of both K-Cor and the debtor-out-of-possession ("Debtor"). While the issue of K-Cor's asserted ownership of the Property had been raised in a response by the Debtor and at various times in oral argument by Debtor's counsel at prior hearings, the Court is unaware of any action taken by K-Cor, either in this Court or another court, to establish ownership of the Property despite

---

[2] The only other remaining objections voiced at the Sale Hearing in opposition to the Sale Motion were those of Rock Ferrone, who appeared pro se. Mr. Ferrone presented argument but no evidence in support of his objections, and those objections were overruled on the record. The sale was approved pending resolution of K-Cor's asserted claim of ownership of the Property.

[3] Ownership of personal property was not at issue at the September 4, 2014 evidentiary hearing; however, K-Cor was ordered to provide an accounting of the items to which it claims ownership. On September 8, 2014, K-Cor filed its *List of Personal Property Claimed by K-Cor, Inc. and Related Persons*. Whether the list is subject to any dispute is unknown at this time.

Debtor remaining, at all relevant times, the record owner of the property, which is undisputed.[4] At the Sale Hearing, in an effort to resolve all issues related to the Sale Motion, a procedure was developed with the parties to bring the matter of K-Cor's alleged ownership interest properly before the Court for resolution. K-Cor was instructed to file a pleading asserting its claim of ownership. Dates were established for responses and briefs to be filed and for an evidentiary hearing to take place.

On August 26, 2014, K-Cor filed its Objection. While the Court anticipated a pleading seeking to quiet title or some similar request for relief, K-Cor instead filed its untimely objection to the Sale Motion. The Court noted this on the record of the August 28, 2014 hearing. Furthermore, the Court advised that, despite the format of an objection, the burden would be on K-Cor at the evidentiary hearing to establish ownership. As time is of the essence to resolve K-Cor's claim of ownership of the Property due to a September 30, 2014 closing date for the sale and the looming threat of foreclosure, the Court proceeded on the schedule previously set forth on the record for responses and an evidentiary hearing.

The approximately three-page Objection offers very little insight into K-Cor's argument in support of an ownership interest in the Property. Without any additional detail, K-Cor "claims to have acquired such title by means of a conveyance from [Rock Airport of Pittsburgh, LLC] to

---

[4] The Court notes that in October of 2012, prior to the appointment of the Chapter 11 Trustee, in relation to a proposed sale of property by the Debtor, K-Cor filed its Limited Objection. *See* Doc. No. 230. Therein, K-Cor asserted that as Rock Ferrone was the principal of both K-Cor and the Debtor, "no deed of conveyance was made" between the two entities with respect to the Property. The Court notes that the proposed sale was orchestrated by Debtor and, in accommodation of its related entity's unsubstantiated claim of ownership of the Property, the proposed sale included what was referred to as a "relocation provision," "a commitment to sell to *Rock Ferrone* a vacant parcel . . . and to provide $500,000.00 to *Rock Ferrone*, or his assignee, for the purpose of constructing a building on that parcel." (Emphasis added.) The Limited Objection contains no support for the claim of ownership.

More recently, on July 7, 2014, over five years after this case commenced, K-Cor filed an unsecured Proof of Claim in the amount of $5,000,000.00, for services allegedly performed by K-Cor. In the attachment to the Proof of Claim, K-Cor asserts its alleged basis for the unsecured claim *and* inserts a sentence regarding ownership of the Property without any substantiation in support of the assertion.

3

K-Cor that was never recorded." *See* Objection, at ¶7. It is noteworthy that in a previous filing related to an earlier, unsuccessful attempt to sell Debtor's property, K-Cor took the position that "no deed of conveyance was made." *See* note 4, *supra*. The only reference to a written document regarding a conveyance of the Property from Debtor to K-Cor was the self-serving testimony of Mr. Ferrone that he remembers signing some agreement. He was unable to recall who prepared such an agreement, who possessed the agreement, or what specifically was contained in the alleged documents relating to a transfer. This Court notes that Mr. Ferrone is a sophisticated businessman, who has appeared pro se in this bankruptcy case on numerous occasions and actively participated in hearings before this Court. Accordingly, it is difficult to believe that Mr. Ferrone, on behalf of the Debtor and K-Cor, failed to maintain documentation of a conveyance between his companies if a conveyance occurred. Most significantly, no written agreement to convey the Property was presented to the Court, and this Court is unconvinced that a written agreement of conveyance exists. If such an agreement did exist, there was sufficient time and opportunity to disclose its existence and/or produce it from the commencement of this bankruptcy case in 2009.[5] This Court finds that, *at most*, there may have been an intent to convey the Property at some time in the future that was never carried out. However, even if an oral agreement to convey the Property out of the Debtor to K-Cor existed, which this Court does not find, K-Cor would nonetheless be unsuccessful in establishing ownership.

---

[5] For example, the Statement of Financial Affairs provided Mr. Ferrone with the opportunity to disclose this alleged arrangement in the section for "property owned by another person that the debtor holds or controls." No such disclosure was made, and Mr. Ferrone, as principal of Debtor, signed under penalty of perjury that the information was true and correct. If an agreement existed, it could have been produced at various times, simply to name a few: in support of the assertions made in the Limited Objection to the prior, unsuccessful sale; with the Proof of Claim of K-Cor containing an exhibit with a one-sentence statement of ownership; at the August 12, 2014 2004 Examination of Mr. Ferrone; in response to multiple requests for production of any documentation in support of the alleged conveyance; and at the time the Trustee's initial motion to sell was filed in March of 2014. Mr. Ferrone had plenty of opportunities and time to find and produce the documentation if it existed.

4

The Statute of Frauds requires that a contract for the conveyance of land be written in order to be enforceable. *See Firetree, Ltd. v. Dep't of Gen. Servs.*, 978 A.2d 1067, 1073 (Pa.Commw.Ct. 2009). The purpose of this requirement "is to prevent the assertion of verbal understandings in the creation of interests or estates in land and to obviate the opportunity for fraud and perjury. It is not a mere rule of evidence, but a declaration of public policy." *See id.* (quoting *Kurland v. Stolker*, 533 A.2d 1370, 1372 (Pa. 1987)). Only under exceptional circumstances, will an unwritten agreement to convey real property be enforceable. *See Firetree*, 978 A.2d at 1074-1075. It has been held that "where the seller admits that there was an oral agreement for the sale of the property or has waived the Statute of Frauds defense" an exception applies. *Id.* at 1074 (citing to *Zlotziver v. Zlotziver*, 49 A.2d 779, 781 (Pa. 1946)). The reason for such an exception is that there is no need for application of the statute where neither perjury nor fraud is possible. *See Deutsche Bank Nat'l Trust Co. v. Evans*, 421 B.R. 193 (W.D.Pa.2009). Here, the policy of the exception is not served by a debtor-out-of-possession's admission that some agreement existed in favor of its related entity. In essence, the same party is on both sides of the transaction, and the only potential detriment is to the estate.

Without a written agreement, the burden of proof is very high to establish the existence of an agreement to convey land. *See Firetree*, 978 A.2d at 1075. "Specifically, the 'terms of the contract must be shown by full, complete, and satisfactory proof,' and the plaintiff must provide evidence 'of such weight and directness as to make out the facts alleged *beyond a doubt*.'" *Id*. (quoting *Kurland v. Stolker*, 533 A.2d 1370, 1373 (Pa. 1987)). The Pennsylvania Supreme Court has set forth the elements to be established:

> Our case law is very explicit as to the requirements which must be met to take an oral contract for real estate out of the statute. The terms of the contract must be shown by full, complete, and satisfactory proof. The evidence must define the boundaries and indicate the quantity of the land. It must fix the amount of the

5

> consideration. It must establish the fact that possession was taken in pursuance of the contract, and, at or immediately after the time it was made, the fact that the change of possession was notorious, and the fact that it has been exclusive, continuous and maintained. And it must show performance or part performance by the vendee which could not be compensated in damages, and such as would make rescission inequitable and unjust.

See *Kurland*, 533 A.2d at 1373. The Court considers the evidence and testimony presented to determine whether these elements have been met by K-Cor.

As a preliminary matter, while a great deal of testimony was focused on the Debtor's previous attempt to sell its property, the Court finds the manner in which the Debtor chose to market its property does not assist this Court in determining ownership of the parcel at issue. Whether the potential buyer at that time, the Debtor, K-Cor, and/or Mr. Ferrone were able to reach an acceptable deal among themselves to address the unsubstantiated assertions of ownership is not relevant and fails to persuade this Court that K-Cor at any previous time demonstrated ownership of the Property.

At the evidentiary hearing, K-Cor failed to produce evidence of the terms of a contract with the Debtor by full, complete, and satisfactory proof. Aside from some testimony that K-Cor was intended to be the owner of the Property, the specific terms of any agreement were not developed on the record. In addition, this Court finds that it is clear from the credible evidence that K-Cor did not maintain exclusive possession of the Property from the time of its relocation in approximately 2001. In an earlier filing by K-Cor in this case, K-Cor asserted that "no deed of conveyance was made between Rock Airport of Pittsburgh, LLC and K-Cor, Inc. with regard to the parcel on which Rock-Built constructed the building *currently occupied by Ad-A-Note, LLC*[,]" for which Mr. Ferrone is also identified as the principal. *See* Doc. No. 230, at ¶4 (emphasis added).[6] This is consistent with Mr. Ferrone's testimony at the September 4, 2014

---

[6] The Court notes that K-Cor refers to this prior filing in its Objection.

evidentiary hearing that Ad-A-Note, LLC occupies the Property. In addition, on behalf of himself individually and Ad-A-Note, LLC, Mr. Ferrone signed a Letter of Intent on October 10, 2012, which represented that "Ad-A-Note, LLC is in actual and exclusive possession of the entire Parcel, and there are no other leases or occupancy agreements affecting the Parcel or any portion thereof." *See* Exhibit X, at ¶3. Within the Letter of Intent, the Parcel is identified as 1219-G-75, which has been identified within this proceeding as the Property. Significantly, and notwithstanding the foregoing, the evidence demonstrates that the Debtor maintained a presence at the Property. On correspondence in various exhibits, bank statements attached to Debtor's Monthly Operating Reports filed in this case while a debtor-in-possession, and even in the Debtor's Chapter 11 Petition, Debtor's address is identified as that of the Property at issue.[7] Accordingly, K-Cor did not establish exclusive possession of the Property.

Furthermore, while the evidence shows that K-Cor did obtain a line of credit for funds to construct a building, the Court finds this insufficient to establish ownership of the Property in light of the credible evidence clearly demonstrating the Debtor's ownership. The credible evidence and testimony established that the Property was deeded to the Debtor, occupied by the Debtor as its corporate and administrative office, and depreciated by the Debtor for tax purposes. In addition, the Debtor demonstrated its ownership of the Property by filing Keystone Opportunity Zone Applications with the Commonwealth of Pennsylvania for tax benefits related to the Property for a number of years through at least 2007. This is so notwithstanding K-Cor's business relocation to the Property occurring in approximately 2001. It is apparent that, as it has now become inconvenient for the Property to be owned by the Debtor, K-Cor seeks to establish

---

[7] This Court also takes judicial notice of the Debtor's Petition and Schedules and notes that attached to Debtor's Schedule G, identifying Executory Contracts and Unexpired Leases, is a document titled "ROCK AIRPORT RENTAL LIST" which lists Armstrong Aviation, with an address of 1000 Rockpointe Blvd., presumably renting space from the Debtor.

ownership of the Property for the benefit the entities' common ownership. Now that the case has progressed to the point where the Trustee is in the position to sell Debtor's property, including the Property, K-Cor is faced with the sudden urgency to establish ownership as it will otherwise lose the ability to occupy a building at the airport property. The concept of property ownership is not so flexible and easily manipulated, and the urgency is one of K-Cor's own making.

Furthermore, K-Cor failed to demonstrate that it paid taxes on the Property, insured the Property, or took any similar steps indicative of ownership aside from simply occupying the Rock-Built Building. This Court finds it telling that, in *Kurland*, the Pennsylvania Supreme Court determined that, despite an individual's assertion that a contract existed to convey property, the party's failure to pay taxes and utilities on the property did not support the assertion. *See* 533 A.2d at 1375. Based upon the evidence presented, it seems K-Cor was a tenant or allowed to occupy the premises for free as a related entity of the Debtor. In fact, permitting use of airport property at no charge was not an uncommon practice for the Debtor as this Court has been advised that others, such as a pilots' club, have been permitted to operate at the airport without paying rent.

Within its brief, K-Cor cites to a number of factually distinguishable cases. For instance, in *Vandelay Holdings, LLC v. Jackson*, the ownership dispute was between an individual who possessed a prior, unrecorded deed and a subsequent purchaser. *See* 31 Pa.D.&C.5th 545 (Pa.Ct.Com.Pl.2013). In that case, the court was faced with the question of whether the purchaser qualified as a bona fide purchaser for value. Similarly, in *Malamed v. Sedelsky*, the court addressed an unrecorded deed. *See* 80 A.2d 853 (Pa. 1951). K-Cor's focus on cases where a deed existed, but was unrecorded, misses the mark, as does its reliance upon this Court's decision in *Kuzy's Drug Store, Inc. v. L'Altrelli* (*In re Kuzy's Drug Store, Inc.*), No. 13-2100-CMB, 2014

8

Bankr. LEXIS 380 (Bankr.W.D.Pa. Jan. 27, 2014). The facts in *Kuzy's Drug Store* are wholly distinguishable and dealt with determination of whether a vehicle was property of a bankruptcy estate. K-Cor also seeks to rely upon the doctrine of equitable conversion for the proposition that an agreement to sell property has the effect of immediately transferring title. As K-Cor failed to establish the existence of an agreement to sell property, the doctrine is inapplicable to the facts of this case.[8]

K-Cor fell woefully short of its burden to produce evidence of sufficient weight and directness to convince this Court that an agreement existed to convey the Property from the Debtor to K-Cor. All credible evidence and testimony at the September 4, 2014 hearing clearly indicated that the Property in question has belonged to the Debtor since its acquisition. K-Cor was a mere occupant. Legal and equitable title are clearly in the Debtor's estate, and this Court finds that the Debtor is the sole owner of the Property consisting of the Rock-Built Building and parcel on which it sits. Furthermore, to the extent Mr. Ferrone made bald assertions at the evidentiary hearing or in the 2004 Examination that K-Cor has a potential interest in any other property to be sold pursuant to the Sale Motion, ownership by K-Cor has not been established. This Court finds the property to be sold under the Sale Motion is that of the Debtor.

---

[8] Despite K-Cor's arguments to the contrary, the Court notes that the Trustee may also qualify under §544(a)(3) as a bona fide purchaser. Although K-Cor cites to *McCannon v. Marston*, 679 F.2d 13 (3d Cir. 1982), in support of its argument that the Chapter 11 Trustee had an obligation to inquire as to K-Cor's ownership interest due to its occupancy, this Court finds *McCannon* to be distinguishable. In *McCannon*, a written agreement for sale of real property was produced and the Third Circuit Court of Appeals recognized, under Pennsylvania law, "a purchaser under a written agreement for the sale of real property to be the equitable owner of that property." *See McCannon*, 679 F.2d at 15. In this case, despite the Trustee's requests for a written agreement and/or deed in support of K-Cor's alleged ownership interest, none have been produced.

Accordingly, the Objection is **OVERRULED.** An appropriate Order will be entered consistent with this Memorandum Opinion.

Date: September 10, 2014         /s/ Carlota M. Böhm
                                 Carlota M. Böhm
                                 United States Bankruptcy Judge

**MAIL TO:**
Office of the United States Trustee
Kirk B. Burkley, Esq.
Elliott J. Schuchardt, Esq.
Robert O. Lampl, Esq.
Rodger L. Puz, Esq.
David K. Rudov, Esq.
William C. Price, Esq.
Timothy P. Palmer, Esq.
Rock Ferrone

FILED
9/10/14 9:45 am
CLERK
U.S. BANKRUPTCY
COURT - PGH